UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

William Pecarina and Kenneth Pecarina, minors, by their parents and next friends, Alan Pecarina and Jennifer Pecarina; and Alan Pecarina and Jennifer Pecarina, individually,

Plaintiffs,

v.

Tokai Corporation, a Japanese company, Scripto-Tokai Corporation, a Delaware corporation, JMP Mexico, also known as JMP Mexico, S.A. de C.V., also known as Tokai de Mexico, S.A., and Wal-Mart Stores, Inc., a Delaware corporation,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 01-1655 ADM/AJB

---

William H. Manning, Esq., and Thomas K. Loughlin, Esq., Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiffs.

Gary J. Gordon, Esq., and John J. Wackman, Esq., Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, Minnesota, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

On January 28, 2002, the undersigned United States District Judge heard various motions to dismiss by Defendants. Defendant Scripto-Tokai Corporation ("Scripto") and Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), argued their Motion to Dismiss [Doc. No. 12] for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). Scripto and Wal-Mart seek dismissal of three of Plaintiffs' claims: (1) for alleged violations of the Consumer Products

FILED MAY 20 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Safety Act, (2) for alleged violations of Minnesota's Consumer Fraud Act, False Advertising Act, and Uniform Deceptive Trade Practices Act, and (3) for common law fraud. Defendant Tokai Corporation ("Tokai") moves the Court to dismiss for lack of personal jurisdiction [Doc. No. 7], and in the alternative, joins Scripto and Wal-Mart's Motion to Dismiss. Defendants JMP Mexico, S.A. de C.V. ("JMP") and Tokai de Mexico, S.A. de C.V. ("Tokai Mexico") also join Scripto and Wal-Mart's Motion to Dismiss [Doc. Nos. 29, 30].[1] Also before the Court is Plaintiffs' Motion in Opposition to Admission *Pro Hac Vice* [Doc. No. 27], for which the last submission was received on March 14, 2002. The final matter before the Court is Plaintiffs' Appeal of Magistrate Judge Arthur J. Boylan's Order of February 28, 2002 [Doc. No. 50].

## II. BACKGROUND

On October 9, 2000, Plaintiff Jennifer Pecarina strapped her 17-month-old son, Kenneth, into his car seat while her four-year-old son, William, was in the bench seat behind Kenneth in the family van. She left the boys in the van briefly to attend to her dog. During her absence, William started a fire in the van with an Aim 'n Flame lighter, which had been inadvertently left in the van. The boys suffered second and third degree burns.

The Aim 'n Flame lighter used by William to start the fire is the non-child-resistant predecessor of the child-resistant Aim 'n Flame lighter currently manufactured and distributed. Plaintiffs filed this lawsuit against the interrelated companies that designed, manufactured, marketed, and distributed the Aim 'n Flame lighters: Scripto, Tokai, JMP, and Tokai Mexico. Plaintiffs also bring suit against Wal-Mart, the largest retailer of Aim 'n Flame lighters.

---

[1] Defendants Scripto, Wal-Mart, Tokai, JMP and Tokai Mexico will be collectively referred to as "Defendants."

Plaintiffs allege claims for (1) negligence, (2) strict products liability, (3) breach of warranty, (4) alleged violations of the post-sale duty to warn, (5) alleged violations of the Consumer Products Safety Act, (6) alleged violations of Minnesota's Consumer Fraud Act, False Advertising Act, Unlawful Trade Practices Act, and Uniform Deceptive Trade Practices Act, and (7) common law fraud. Three of these claims are the subject of Defendants' Motion to Dismiss. Before reaching the issues related to those claims, personal jurisdiction over Tokai will be addressed.

## III. DISCUSSION

### A. Tokai's Motion to Dismiss for Lack of Personal Jurisdiction

Constitutional due process requirements protect a potential defendant from the unfair exercise of personal jurisdiction. *See Pennoyer v. Neff*, 95 U.S. 714 (1877). "[P]ersonal jurisdiction over a nonresident defendant is proper only if the defendant has certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Tokai argues that this Court may not properly exercise personal jurisdiction over it because it is a Japanese corporation having no contacts with Minnesota.

In the context of a challenge to personal jurisdiction on a motion to dismiss, Plaintiffs need only submit evidence that, when viewed in the light most favorable to Plaintiffs, establishes a prima facie case of personal jurisdiction. *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). All factual disputes must be resolved in Plaintiff's favor. *Id.* However, Plaintiff bears the ultimate burden at trial to establish personal jurisdiction by a preponderance of the evidence. *See Digi-Tel Holdings*, 89 F.3d at 522; *Aero Systems Eng'g., Inc. v. Opron, Inc.*, 21 F.Supp.2d 990, 995 (D. Minn. 1998).

Generally, an assessment of personal jurisdiction involves two independent inquiries: (1) whether the applicable state long-arm statute, Minnesota Statute § 543.19, is satisfied, and (2) whether this Court's exercise of jurisdiction is consistent with the requisites of due process. *See Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000). The Eighth Circuit has recognized that Minnesota has interpreted its long-arm statute to be coextensive with the limits of due process. *See Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 697 (8th Cir. 1995); *see also Rostad v. On-Deck, Inc.*, 372 N.W.2d 717, 719 (Minn. 1985). Thus, this discussion will focus on whether exercising personal jurisdiction over Tokai comports with federal due process. *See id.*

The due process clause requires that there be "minimum contacts" between a nonresident defendant and the forum state. Sufficient minimum contacts exist if Tokai's conduct and connection with Minnesota are such that it should reasonably anticipate being haled into court here, and if maintenance of this suit does not offend traditional notions of fair play and substantial justice. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994). The Eighth Circuit has held that a seller at the head of a distribution network satisfies the requisite foreseeability of due process where it "delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum state." *Barone*, 25 F.3d at 613 (citations omitted); *accord Clune*, 233 F.3d at 544-45.

Tokai is a corporation existing under the laws of Japan, with its principal place of business in Tokyo. Tokai designed the Aim 'n Flame lighters; Scripto distributes the lighters in the United States. *See* Manning Aff., Ex. H, at 45-48; Manning Aff., Ex. I, at 196. Scripto is a wholly owned subsidiary of Tokai acquired in 1984. *See id.*, Ex. H, at 12-13, 34. Scripto's

president is appointed by Tokai and Tokai executives serve on Scripto's board of directors. In 1987, Tokai replaced Scripto's president with the former president of Tokai. *See id.*, Ex. F, at 24-25. A past president of Scripto, Kenji Iwagaki, testified that he was required to report to the president of Tokai. *See id.*, Ex. J, at 60-61.

Together, Scripto and Tokai own JMP and Tokai Mexico. *See id.*, Ex. H, at 12-13. Scripto imports Aim 'n Flame lighters, some of which are manufactured in Mexico. *See id.*, Ex. F, at 45-46. Tokai also produces some of the component parts used in manufacturing the Aim 'n Flame lighters. *See* Kurata Decl. ¶ 4; Def. Mem. in Supp., at 6.

Plaintiffs have presented evidence indicating that Tokai was the head of a distribution network, controlling the network to deliver Tokai's products into the stream of commerce. Tokai supplied the lighters to Scripto for distribution. *See id.*, Ex. F, at 45-46. A vice-president at Scripto, Norman Merwise, testified that Tokai exercised ultimate authority over Scripto's marketing and distribution activities. *See* Manning Aff., Ex. K, at 47-49. Another vice-president at Scripto, Fred Ashley, stated, "[Scripto] is not a manufacturer. It's a distributor." *Id.*, Ex. I, at 196. Ashley also observed that "any of the design work or design changes [on the lighters] would come from Tokai Corporation . . . ." *Id.* at 197. Scripto was required to report product safety issues to Tokai. *See id.*, Ex. H, at 21-22. Tokai possessed the definitive authority to decide which products Scripto would distribute. *See id.*, Ex. H, at 34.

When viewed in the light most favorable to Plaintiffs, the evidence supports their allegation that Tokai controlled the design, production and distribution of Aim 'n Flame lighters. As noted above, personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be

purchased by consumers in the forum state. *See Clune*, 233 F.3d at 544-45; *Barone*, 25 F.3d at 613. Plaintiffs have produced prima facie evidence supporting the exercise of personal jurisdiction over Tokai. The burden remains on Plaintiffs to establish personal jurisdiction by a preponderance of the evidence at trial.

The quantum of evidence presented by Plaintiffs distinguishes this case from *Savage v. Scripto-Tokai Corp.*, 147 F.Supp.2d 86 (D. Conn. 2001), where the plaintiff's record evidence was insufficient to support the exercise of personal jurisdiction over Tokai. In finding no personal jurisdiction, however, *Savage* anticipated that evidence of Tokai's awareness of, or role in, the nationwide scope of Scripto's distribution of Aim 'n Flame lighters "could establish the degree of interconnection between a foreign parent and U.S. subsidiary sufficient to support the exercise of jurisdiction over the parent corporation." *Id.* at 93 n.3. In this case, Plaintiffs have proffered sufficient evidence of Tokai's control over the design, production and distribution of the Aim 'n Flame lighters to establish the "interconnection" found to be lacking in *Savage*. Under the circumstances, the exercise of personal jurisdiction over Tokai is appropriate. *See Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980) (holding Tokai's predecessor corporation subject to personal jurisdiction in Texas, at a time when Scripto, the sole distributor, was still an independent company).

**B. Defendants' Motion to Dismiss Specific Claims**

A complaint is properly dismissed under Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Kaylor v. Fields*, 661 F.2d 1177, 1180-81 (8th Cir. 1981) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When examining the complaint, a

court must accept all of the allegations contained therein and all inferences arising therefrom as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). It must be determined whether the well-pleaded allegations of fact, when construed in a light most favorable to the plaintiff, state a factual claim upon which relief can be granted on some legal theory. *See Penn v. Iowa State Bd. of Regents*, 999 F.2d 305, 307 (8th Cir. 1993); *Dicken v. Ashcroft*, 972 F.2d 231, 233 (8th Cir. 1992).

Defendants do not seek dismissal of the entire Complaint, but move to dismiss Plaintiffs' claims for: (1) alleged violations of the Consumer Products Safety Act, (2) alleged violations of Minnesota's Consumer Fraud Act, False Advertising Act, and Uniform Deceptive Trade Practices Act, and (3) common law fraud. These claims should only be dismissed if no set of facts can be proven in support of such claims that would entitle Defendants to relief. *Conley*, 355 U.S. at 45-46.

**1. Consumer Products Safety Act**

Plaintiffs allege that Defendants violated the Consumer Products Safety Act (the "CPSA"), and that they are entitled to seek relief for the violation pursuant to 15 U.S.C. § 2072. Section 2072(a) of the CPSA provides a private cause of action for persons injured as a result of a violation of "a consumer product safety rule, or any other rule or order issued by the Commission," in limited circumstances. 15 U.S.C. § 2072(a). In *Drake v. Honeywell*, the Eighth Circuit held that there is no private cause of action for a violation of the CPSA itself. 797 F.2d 603, 606 (8th Cir. 1986). The *Drake* court also held that alleged violations of interpretive rules, specifically the product hazard reporting rules at 16 C.F.R. Part 1115, are not actionable. *Id.* Plaintiffs' purported cause of action under the CPSA is precluded by *Drake*. A "private cause of

action cannot arise from an injury resulting from noncompliance with the product hazard reporting rules issued by the Commission." *Id.* at 609. Plaintiffs' contentions that a cause of action under the CPSA is authorized in this case is unsupported by any legal authority and Plaintiffs' attempts to circumvent Eighth Circuit precedent are unpersuasive.

Moreover, the February 26, 1996, letter from the Commission to Scripto is not an "order" that can support a private cause of action under 15 U.S.C. § 2072. The letter states that the Commission is "requesting" that Scripto provide information regarding child-play fires pursuant to 16 C.F.R. Part 1115.13(d) and "requests" a response within 10 days. Wackman Aff., Ex. 1. The letter neither mandated that Scripto's response be made under oath nor informed Scripto of its right to challenge "orders" issued by the Commission. *See id.* The absence of such topics from the letter indicates that the Commission was not issuing an "order." *See* 16 C.F.R. Part 1118.8 (responses to "orders" must be made under oath); 16 C.F.R. Part 1118.9 (procedures to challenge an "order"). Plaintiffs' claim under the CPSA is dismissed.

**2. Consumer Fraud Act, False Advertising Act, and Uniform Deceptive Trade Practices Act**

Defendants seek dismissal of Plaintiffs' claims under Minnesota's Consumer Fraud Act, Minn. Stat. § 325F.69, and False Advertising Act, Minn. Stat. § 325F.67.[2] Neither the Consumer Fraud Act nor the False Advertising Act provide a private right of action to individual consumers. In limited circumstances, however, private remedies may be available to individuals through the Private Attorney General Act ("Private AG Act"), Minn. Stat. § 8.31. The Private

---

[2] Defendants do not seek dismissal of Plaintiffs' claim pursuant to the Unlawful Trade Practices Act, Minn. Stat. § 325D.15. *See* Def. Mem., at 6, n.4.

AG Act offers "an incentive for defrauded consumers to bring claims in lieu of the attorney general." *Ly v. Nystrom*, 615 N.W.2d 302, 311 (Minn. 2000). Plaintiffs' Consumer Fraud Act and False Advertising Act claims will survive dismissal only if they may be brought pursuant to the Private AG Act, since there is no individual, private cause of action provided by those Acts.

Because the Private AG Act gives private citizens the right to act as a "private" attorney general, the role and duties of the attorney general concerning the enforcement of fraudulent business practice laws define the limits of a private claimant under the statute. *Id.* at 313. Minnesota law requires its attorney general to appear for the state in civil lawsuits "whenever, in the attorney general's opinion, the interests of the state require it." Minn. Stat. § 8.01. Accordingly, "the purpose of any statute granting private citizens authority to bring a lawsuit in lieu of the attorney general, is the protection of public rights and the preservation of the interests of the state." *Ly*, 615 N.W.2d at 313. For Plaintiffs to state their claims under the Private AG Act, the public interest must be demonstrated. *Id.*

Plaintiffs fail to demonstrate that their cause of action benefits the public. Plaintiffs contend proof of a transaction between a large manufacturer and retailer and members of the consuming public, and the fraud and false advertising perpetrated on the consuming public brings this case within the Private AG Act.[3] However, the essence of Plaintiffs' lawsuit is personal injury, involving allegations of negligence and products liability. Plaintiffs seek damages for

---

[3] Plaintiffs note the public will benefit because they intend to seek an injunction prohibiting further sale or distribution of Aim 'n Flame lighters. *See* Pl. Mem., at 29, n.8. However, Scripto, the exclusive distributor in the United States, has not distributed or sold non-child-resistant Aim 'n Flame lighters for several years. *See* Def. Reply Mem., at 10, n.5.

past and future medical expenses, pain and suffering, wage loss, and emotional distress. *See* Compl. ¶ 56. Such damages do not benefit the public. The redress is to compensate Plaintiffs for their injuries. The rationale underlying the *Ly v. Nystrom* decision applies here; Plaintiffs may not craft their products liability suit to bring it within the ambit of the Private AG Act. Because the claims are not brought for the benefit of the public, Plaintiffs' claims under the Consumer Fraud Act and the False Advertising Act are dismissed.

Defendants move to dismiss Plaintiffs' claim under the Uniform Deceptive Trade Practices Act because Plaintiffs lack standing to seek injunctive relief based on their past injury. *See* Def. Mem., at 9-10. Plaintiffs concede that this claim should be dismissed. *See* Pl. Mem., at 25, n.7. Plaintiffs' Uniform Deceptive Trade Practices Act claim is dismissed.

**3. Fraud**

Defendants seek dismissal of Plaintiffs' claim for fraud. To establish a claim for fraud under Minnesota law, a plaintiff must prove that: (1) defendant made a false representation about a past or present fact; (2) the false representation was material and susceptible of knowledge; (3) defendant knew the representation was false or made the representation without knowing whether it was true or false; (4) defendant intended that the plaintiff rely on the representation; (5) plaintiff reasonably relied on the representation; and (6) plaintiff suffered damages due to the representation. *Masepohl v. American Tobacco Co.*, 974 F.Supp. 1245, 1250 (D. Minn. 1245) (citing *M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992)).

Allegations of fraud must be stated with particularity. *See* Fed. R. Civ. P. 9(b); *Tuttle v. Lorillard Tobacco Co.*, 118 F.Supp.2d 954, 963 (D. Minn. 2000). Conclusory allegations of

fraudulent conduct are insufficient. *See Commercial Prop. Invs., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir. 1995). Plaintiffs must state the "who, what, when, where, and how: the first paragraph of any newspaper story." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997). Plaintiffs fail to specifically identify the underlying facts of fraudulent conduct with the particularity required by Rule 9(b).

Plaintiffs admit that their common law fraud claim is limited to the allegations of paragraph 53(a) of the Complaint and concede that the Complaint fails to plead reliance with the particularity required by Fed. R. Civ. P. 9(b). *See* Pl. Mem., at 33. Furthermore, the Complaint does not plead falsity with sufficient particularity. Conclusory allegations of fraud are insufficient. Plaintiffs' claim for fraud as stated in the Complaint is dismissed. Plaintiffs are granted leave to amend their Complaint and plead fraud with the particularity required by Rule 9(b).

**C. Plaintiffs' Motion in Opposition to Admission *Pro Hac Vice***

On January 22, 2002, Defendants filed the standard approved form petitions for admission *pro hac vice* of Mark Suzumoto, Esq., and Keith Sipprelle, Esq., in this case. Suzumoto and Sipprelle are members of Van Etten, Suzumoto & Becket, L.L.P., a law firm based in Santa Monica, California. On January 25, 2002, Plaintiffs filed a Motion in Opposition to Admission *Pro Hac Vice* of Suzumoto and Sipprelle, with a memorandum and exhibits [Doc. No. 27]. On February 19, 2002, Defendants filed a memorandum in support of the Motions for Admission *Pro Hac Vice* [Doc. No. 42]. Three days later, Plaintiffs filed a reply memorandum opposing the admission *pro hac vice* of Suzumoto and Sipprelle [Doc. No. 46]. Both parties then

sent correspondence to the Court regarding this flurry of filings. Pursuant to a letter from the Court permitting it, Defendants submitted a further response memorandum in support of the motions for admission *pro hac vice* on March 14, 2002 [Doc. No. 48].

Opposing the Motions for Admission *Pro Hac Vice*, Plaintiffs allege that Suzumoto and Sipprelle will not meet the standards of integrity and candor required of officers of this Court. Suzumoto and Sipprelle are the longstanding general counsel for Scripto. Plaintiffs cite many cases in which courts have issued orders to compel discovery after Scripto improperly withheld documents. *See Flock, et al. v. Scripto-Tokai Corp., et al.*, No. 00-CV-3794 (S.D. Tex. 2000); *Savage, et al. v. Scripto-Tokai Corp., et al.*, No. 00-CV-1158 (D. Conn. 2000); *Powell, et al. v. Wal-Mart Stores, et al.*, No. 99-CV-570 (S.D. Ala. 1999); *Bartholic, et al. v. Scripto-Tokai Corp., et al.*, No. 98-CV-681 (D. Colo. 1998); *Efting, et al. v. Tokai Corp., et al.*, No. 98-CV-260 (W.D. Mo. 1998); *Smith v. Scripto-Tokai Corp., et al.*, No. 99-CV-1707 (W.D. Pa. 1999). Plaintiffs argue that Scripto's history of discovery abuse indicates that Suzumoto and Sipprelle will fail to measure up to the standards of integrity and candor expected of attorneys in this jurisdiction.

The Local Rules provide that "[a]ny attorney residing outside of this state and admitted to practice before and then in good standing in another United States District Court" may be permitted to appear and participate as an attorney in the pending proceeding. D. Minn. LR 83.5(d). Plaintiffs have failed to produce evidence indicating that Suzumoto and Sipprelle are not admitted to practice or not in good standing in another United States District Court. Suzumoto and Sipprelle have associated with local counsel, Gary J. Gordon and John J. Wackman of Rider, Bennett, Egan & Arundel, L.L.P., as required by Local Rule 83.5(d).

Suzumoto and Sipprelle have met the prerequisites for this Court to grant their Motions for Admission *Pro Hac Vice*.

Plaintiffs have raised no concerns about the choice or integrity of the local counsel. *See* Pl. Mem., at 9, n.4. While the Motions for Admission *Pro Hac Vice* of Suzumoto and Sipprelle will be granted, the local counsel for Defendants, Rider, Bennett, Egan & Arundel, L.L.P., will be required to oversee all discovery and supervise all discovery responses. Plaintiffs have alerted the Court to the history of Suzumoto and Sipprelle, and their conduct will be monitored to assure that zealous advocacy does not fall to the level of sanctionable discovery abuse. *See* Fed. R. Civ. P. 26(g); Fed. R. Civ. P. 37(a)&(c). Additionally, if the anticipation becomes a likelihood that Suzumoto will appear as a fact witness, then he may not remain as trial counsel.

**D. Plaintiffs' Appeal of Judge Boylan's Order**

In ruling on an appeal from a non-dispositive matter decided by a magistrate judge, a district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72 .1(b)(2). This standard of review is extremely deferential. *See Reko v. Creative Promotions, Inc.*, 70 F.Supp.2d 1005, 1007 (D. Minn. 1999); *Banbury v. Omnitron Int'l., Inc.*, 818 F.Supp. 276, 279 (D. Minn. 1993). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Judge Boylan issued a Confidentiality Order on February 28, 2002, placing reasonable

limitations on Plaintiffs' dissemination of Defendants' commercial information to third parties. Liberal discovery "is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34 (1984). Because of liberal discovery and the potential for abuse, district courts have broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Id.* at 36. The Federal Rules of Civil Procedure provide for the protection of a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(7). Pursuant to Rule 26(c), a court may fashion "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Defendants have sufficiently demonstrated good cause for protecting their commercially sensitive and confidential information. *See* Ashley Aff. ¶¶ 3-7. Because Judge Boylan's Order does not preclude Plaintiffs from discovering Defendants' sensitive information or using it to prepare for trial, Plaintiffs will not be unduly prejudiced by the Confidentiality Order. A review of this situation does not create a definite and firm conviction that a mistake has been committed. The Order is not "clearly erroneous or contrary to law," and it is affirmed.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Defendant Tokai's Motion to Dismiss for lack of personal jurisdiction [Doc. No. 7] is **DENIED**;

(2) Defendants' Motion to Dismiss specific causes of action [Doc. Nos. 12, 29, 30] is **GRANTED**; Plaintiffs' Consumer Products Safety Act claim, Consumer Fraud Act claim, False Advertising Act claim, Uniform Deceptive Trade Practices Act claim, and fraud claim are **DISMISSED**. Plaintiffs are granted leave to amend their Complaint and plead fraud with the particularity required by Rule 9(b).

(3) Plaintiffs' Motion in Opposition to Admission *Pro Hac Vice* [Doc. No. 27] is **DENIED**; The Motions for Admission *Pro Hac Vice* are **GRANTED**; Local counsel for Defendants, Rider, Bennett, Egan & Arundel, L.L.P., is ordered to oversee all discovery in this matter and supervise all discovery responses.

(4) Plaintiffs' Appeal of Judge Boylan's Order of February 28, 2002 [Doc. No. 50] is **DENIED** and the Order is **AFFIRMED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: May 20, 2002